### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
#### Houston Division

_____

| | | |
|---|---|---|
| JANIE SLAMON, as Executrix of the | : | |
| Estate of James Slamon, and | : | No. |
| ERIC LEWIS, on behalf of themselves | : | |
| and all others similarly situated, | : | |
| | : | |
| *Plaintiffs* | : | Jury Trial Demanded |
| v. | : | |
| | : | |
| CALLON (MARCELLUS) LLC | : | |
| f/k/a CARRIZO (MARCELLUS) LLC, | : | |
| and CALLON PETROLEUM COMPANY, | : | |
| | : | |
| *Defendants* | : | |

_____ :

## CLASS ACTION COMPLAINT

Plaintiffs Janie Slamon, as Executrix of the Estate of James Slamon ("Slamon") and Eric Lewis ("Lewis" and collectively with Slamon "Plaintiffs") allege, on behalf of themselves and all others similar situated, upon personal knowledge as to themselves and their acts and as to all other matters upon the investigation of counsel and upon information and belief as follows:

## I.   NATURE OF THE ACTION

1.      This is a class action seeking damages and injunctive relief based upon the intentional fraudulent transfer by Defendant Callon (Marcellus) LLC formerly known as Carrizo (Marcellus) LLC ("Marcellus") of $73.9 million -- substantially all of its assets at the time – to its ultimate parent, Defendant Callon Petroleum Company ("Callon", and collectively with Marcellus, "Defendants"), for zero consideration -- *none*.

2.      In or around November 2017, Marcellus completed the sale to BKV Chelsea, LLC ("BKV") of substantially all of Marcellus' assets, including its interests in Paid Up Oil and Gas Leases (the "Class Leases") for land in the Marcellus Shale region of Northeast Pennsylvania owned by Plaintiffs and other lessors (the "Class").

3.      At the time, Marcellus' interests in the Class Leases represented a substantial portion of Marcellus' assets. The ultimate sale proceeds due and owing from BKV to Marcellus was $73.9 million.

4.      Despite selling all of its assets to BKV, Marcellus did not receive any money from BKV. Instead, Marcellus directed BKV to pay the entire $73.9 million to Marcellus' ultimate parent, Carrizo Oil & Gas, Inc., which subsequently merged with and became part of Defendant Callon. In exchange for receiving the $73.9 million from BKV that rightfully belonged to Marcellus, Callon paid nothing, and provided no other consideration of any kind.

5.       This fraudulent transfer of substantially all of Marcellus' assets to Callon took place during the pendency of a class action brought by Plaintiffs in the United States District Court for the Middle District of Pennsylvania against Marcellus and other defendants (the "Pennsylvania Action").[1]  Upon information and belief, Callon, as Marcellus' ultimate parent, had knowledge of the pending class action at the time it accepted the $73.9 million from Marcellus in exchange for zero consideration.

6.      Marcellus fraudulently transferred all of its assets to Callon in order to hinder, delay, or defraud Plaintiffs and the putative Classes as contingent creditors of Marcellus.

---

[1] *See Slamon et al. v. Callon (Marcellus) LLC*, No. 3:16-cv-02187-RDM (M.D.Pa.).

7.      Following discovery of Defendants' participation in the fraudulent transfer, Plaintiffs and the Class sought leave in the Pennsylvania Action to file a Supplemental Amended Complaint to add Callon as a defendant in that Action and add a claim for violation of the Pennsylvania Uniform Fraudulent Transfer Act against Marcellus and Callon. Defendants opposed Plaintiffs' Motion for Leave by contending that the court in the Pennsylvania Action lacked personal jurisdiction over Callon. Plaintiffs strongly opposed the contention that that court lacked personal jurisdiction over Callon.

8.      The court in the Pennsylvania Action has yet to rule on the Motion for Leave or Callon's arguments regarding personal jurisdiction.

9.      Plaintiffs continue to believe the court in the Pennsylvania Action has personal jurisdiction over Callon. However, in an abundance of caution and in order to ensure that the two certified classes in the Pennsylvania Action are fully protected, Plaintiffs now bring this action in this court to preserve their fraudulent transfer claims against Defendants in the event that the court in the Pennsylvania Action determines that it lacks personal jurisdiction over Callon.

## II.   **PARTIES**

### A.   **Plaintiffs**

10.     Prior to his death, James Slamon was a Pennsylvania resident who owned 203.72 acres of real property located in the Township of Forest Lake, County of Susquehanna, which is within the Marcellus Shale region of Pennsylvania ("Slamon Leased Property").  On or about April 7, 2009, James Slamon entered into the Lease and Addendum with Marcellus, attached as Exhibit A.  On July 16, 2019, while the Pennsylvania Action was pending, James Slamon died.  By Order dated August 22, 2019, the court in the Pennsylvania Action substituted Janie Slamon, as Executrix of the Estate of James Slamon, as plaintiff.

11.     Eric Lewis is a Pennsylvania resident with an address at 709 Fair Hill Road, Montrose, PA 18801.  On or about April 25, 2009, Lewis and his wife, as tenants by the entireties, entered into a Lease and Addendum with Marcellus in connection with 21.06 acres of real property located in the Township of Bridgewater, County of Susquehanna, in Pennsylvania.  On or about May 6, 2009, Lewis and his wife, as tenants by the entireties, entered into a Lease and Addendum with Marcellus in connection with 58.35 acres of real property located in the Township of Jessup, County of Susquehanna, in Pennsylvania.  The two Leases and Addenda are collectively attached as Exhibit B.

B.     **Defendants**

12.     Carrizo (Marcellus), LLC, now known as Callon (Marcellus) LLC, was a Delaware limited liability company with a principal place of business located at 500 Dallas Street, Suite 2300, Houston, Texas 77002.  Carrizo (Marcellus), LLC was an indirect, wholly owned subsidiary of Carrizo Oil & Gas, Inc.

13.     On July 14, 2019, Carrizo Oil & Gas, Inc. ("Carrizo Parent") and Callon Petroleum Company ("Callon") publicly announced a merger agreement whereby Carrizo Parent would merge with and into Callon, with Callon as the surviving corporation. On December 20, 2019, the Callon-Carrizo Parent merger closed. As part of the merger, Carrizo (Marcellus) LLC's name was changed to Callon (Marcellus) LLC. In all other respects the merger had no effect on Carrizo (Marcellus) LLC; the newly named Callon (Marcellus) LLC remained an indirect, wholly-owned subsidiary of the merged Callon-Carrizo parent, Callon. Callon (Marcellus) LLC, formerly known as Carrizo (Marcellus) LLC, is referred to herein as "Marcellus."

4

14.     Defendant Callon Petroleum Company ("Callon") is a Delaware corporation with a principal place of business located at 2000 W. Sam Houston Parkway South, Suite 2000, Houston, Texas 77042.

## III.    JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a) and 28 U.S.C. § 1332(d).

16.     This Court has personal jurisdiction over Marcellus and Callon because their principal places of business are located in this State.

17.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) given that, *inter alia*, Defendants' principal places of business are located in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.    FACTUAL ALLEGATIONS

### A.    Background: Marcellus' Improper Royalty Payments Under the Class Leases and the Pennsylvania Action

18.     On April 7, 2009, James Slamon entered into a Paid Up Oil and Gas Lease Agreement and Lease Addendum with Marcellus.  See Exhibit A.

19.     On April 25, 2009, and on May 6, 2009, Lewis entered into separate Paid Up Oil and Gas Lease Agreements and Lease Addenda with Marcellus.  See Exhibit B.

20.     The Slamon Lease and the Lewis Leases are substantively identical.

21.     In exchange for granting Marcellus exclusive rights to the oil and gas underlying their land, Plaintiffs received an initial bonus payment and, among other things, became entitled to a "production royalty" on all gas production.

22.     With regard to the production royalty, the Lease provides as follows:

> Lessee shall deliver to the credit of Lessor, *free of all costs (whether pre-production or post-production)*, a monthly Royalty

equal to eighteen percent (18%) of ***the greater of*** (i) the market value, measured at the point of take, of all gas and any constituents produced from the Leasehold or lands pooled or unitized therewith, or (ii) the gross amount of revenue paid to Lessee for all gas and any constituents produced from the Leasehold or lands pooled or unitized therewith, measured at the point of take; provided, however, that when gas production is sold in an arms-length sale transaction with an unaffiliated third party, the value of such gas production shall be the price paid to Lessee.

Lease ¶ 4(b)(ii) (emphasis added).

23.     The Lease further provides that:

"[t]he value of oil, gas, or other hydrocarbon production shall be determined on the basis of ***the greater of*** (i) the prevailing local market price at the time of sale or use, or NYMEX spot price as published at the time of sale, whichever is greater, or (ii) the price paid to Lessee from the sale or use of the gas, including proceeds and any thing of value received by Lessee; provided, however, that when gas production is sold in an arms-length sale transaction with an unaffiliated third party, the value of the gas production shall be the price paid to Lessee."

Lease ¶ 4(f) (emphasis added).

24.     In or around August 2010, James Slamon agreed to an assignment by Marcellus to Reliance Marcellus II, LLC ("Reliance") of an undivided sixty percent (60%) working interest in the Lease. Marcellus remained as the operator and Reliance was identified solely as a capital partner of Marcellus. Nothing in the terms of the assignment modified the terms of the Lease.

25.     Gas production from James Slamon's land began in late 2011, and Slamon began receiving royalty checks in March 2012.

26.     Gas production from Lewis' lands began in early 2013, and Lewis began receiving royalty checks in or around April 2013.

27.    The royalty payments made by Marcellus to Plaintiffs and Class Members were based on prices that were consistently below both the NYMEX spot price for natural gas and the prices paid by other comparable gas producers in the same area, such as Cabot Oil & Gas Corporation.

28.    In response to inquiries by James Slamon, Marcellus maintained that it was paying Royalties based on the net amount it received from selling the gas produced from Plaintiff's and Class Members' land to DTE Energy Trading, Inc. ("DTE"), which Marcellus characterizes as an "unaffiliated third party." In reality, DTE acted as Marcellus' marketing company and was essentially its agent, charging a fixed fee to assist Marcellus in moving the gas from the wellhead to the market.

29.    Marcellus' payment of Royalties to Plaintiffs and the Class based on the net amount it received from DTE after all pre-production and post-production expenses had been deducted rather than the gross amount received from DTE was improper under the terms of the Lease.

30.    On October 3, 2016, James Slamon filed an action against Marcellus and other parties in the Court of Common Pleas of Susquehanna County, Pennsylvania, alleging, *inter alia*, that Marcellus had breached the terms of the Class Leases by improperly deducting post-production costs and by failing to properly compare the price it received to the NYMEX spot price as required by those Leases.

31.    On October 31, 2016, Marcellus and other defendants removed the case to the United States District Court for the Middle District of Pennsylvania.

32.    Upon information and belief, Marcellus Parent (and by imputation Callon), as Marcellus' ultimate parent, was aware of the Pennsylvania Action at or shortly after the time it was filed.

### B.  The Sale of Marcellus' Assets to BKV and Fraudulent Transfer of the Sale Proceeds to Callon

45.  On October 5, 2017, Marcellus entered into a Purchase and Sale Agreement ("PSA") with BKV for the sale of all of Marcellus' assets in the Marcellus Shale region, including the Class Leases. The effective date of the sale was retrospectively set at April 1, 2017.

46.  At the time Marcellus and BKV entered into the PSA, the Pennsylvania Action had been pending for more than a year. Marcellus and BKV both had actual knowledge of the Pennsylvania Action and the claims alleged therein.

47.  Upon information and belief, at the time Marcellus and BKV entered into the PSA, Callon also had actual knowledge of the Pennsylvania Action and the claims alleged therein.

48.  On October 5, 2017, BKV deposited $6.3 million into escrow as a deposit for the purchase of all of Marcellus' assets.

49.  The original purchase price for all of Marcellus' assets was $84 million; however, as a result of certain adjustments, the aggregate net sale price was reduced to $73.9 million.

50.  The sale of all of Marcellus' assets to BKV closed on November 21, 2017.

51.  Despite the fact that it had just sold the entirety of its assets, Marcellus did not direct BKV to pay the $67.6 million balance to a bank account owned by Marcellus. Nor did Marcellus direct the escrow agent to release the $6.3 million deposit to a bank account owned by Marcellus. Instead, unbeknownst to Plaintiffs and the Class, Marcellus directed that the entire $73.9 million (including the deposit) be paid to an account (the "Fraudulent Transfer Account") owned and controlled solely by Callon.

52.     All of the assets BKV received in exchange for the $73.9 million in proceeds came solely from Marcellus. BKV received nothing from Callon and Callon paid no consideration of any kind to either Marcellus or BKV in exchange for its receipt of the $73.9 million in sale proceeds.

53.     Upon information and belief, Marcellus received no consideration or anything of commensurate value from Callon in exchange for the $73.9 million BKV and the escrow agent transferred into the Fraudulent Transfer Account. Instead, upon the completion of the sale of all assets to BKV, Marcellus was left with nothing and immediately became insolvent.

54.     The transfer of these funds – in return for **zero** consideration – constitutes a fraudulent transfer and is a voidable transaction pursuant to both the Texas Uniform Fraudulent Transfer Act, Tex. Bus & Com. § 24.001 et seq, and the Pennsylvania Uniform Voidable Transactions Act, 12 Pa.C.S. §§ 5101 et seq.

55.     Despite becoming immediately insolvent as a result of the fraudulent transfer, Marcellus did not declare bankruptcy. Nor did Marcellus dissolve, liquidate, wind down, or otherwise cease to exist as an entity.

56.     Following the sale of all of its assets to BKV and the transfer of all of the proceeds of that sale to Callon, Marcellus continued to vigorously defend the Pennsylvania Action. At no point in time did Marcellus communicate to anyone, including Plaintiffs or the court in the Pennsylvania Action, that Marcellus had transferred all of its assets to its ultimate parent Callon and become insolvent.

57.     As part of the sale to BKV, Marcellus agreed to continue performing certain services during a "Transition Period" lasting until May 31, 2018. During the Transition Period, Marcellus continued to act as

operator under the Class Leases, and continued to be responsible for calculating and remitting royalty payments under the Class Leases.

58.    Plaintiffs are currently unaware of whether Marcellus received any of the monies due and owing for the provision of such transition services or if those monies, like the sale proceeds, were also fraudulently transferred to Callon.

59.    Upon information and belief, on June 1, 2018, Marcellus ceased all operations. As a result of the fraudulent transfer of the entirety of the BKV sale proceeds to Callon, Marcellus continued to remain fully insolvent at that time (and at all times thereafter). Once again, Marcellus did not declare bankruptcy, nor did it dissolve, liquidate, wind up, or otherwise cease to exist as an entity. Once again, Marcellus did not inform Plaintiffs or the court in the Pennsylvania Action that Marcellus had transferred all of its assets to its ultimate parent Callon and become insolvent.

60.    On May 18, 2020, the court in the Pennsylvania Action certified two classes: the No Deductions Class[2] and the Highest Price Class.[3]

---

[2] The No Deductions Class includes "[a]ll persons or entities within the Commonwealth [of Pennsylvania] who are, or have been, a royalty owner under a Paid Up Oil and Gas Lease with or assigned to one or more Defendants where that lease expressly prohibits the deduction of post-production expenses when calculating royalty amounts due."

[3] The Highest Price Class includes "[a]ll persons or or entities within the Commonwealth [of Pennsylvania] who are, or have been, a royalty owner under a Paid Up Oil and Gas Lease with or assigned to one or more Defendants where that lease expressly provides that the value of natural gas on which lessee owes a royalty percentage is, absent application of a contractual proviso, the greater of the NYMEX spot price and/or the prevailing local market price, or the price at which gas is sold."

61.     In February 2022, Plaintiffs through their counsel learned for the first time that, in connection with Marcellus' sale of assets to BKV in 2017, Marcellus had fraudulently transferred the entirety of the sale proceeds to Callon. Plaintiffs were also advised at that time that Marcellus purportedly had no assets.

62.     On April 22, 2022, following several weeks of discussions with Marcellus' counsel over the transfer of the entire $73.9 sale proceeds to Callon and Marcellus' purported lack of assets, Plaintiffs filed in the Pennsylvania Action a Motion for Leave to File Supplemental Amended Complaint to add Callon as a defendant in that action and to add a claim against Marcellus and Callon for violations of the Pennsylvania Uniform Voidable Transactions Act.

63.     On May 13, 2022, Marcellus filed a brief in opposition to Plaintiffs' Motion for Leave. As part of its opposition, Marcellus and Callon argued that the court in the Pennsylvania Action lacked personal jurisdiction over Callon.

64.     On May 27, 2022, Plaintiffs filed a reply memorandum in support of their Motion for Leave, explaining that the court in fact has personal jurisdiction over Callon as a result of its participation in the fraudulent transfer.

65.     To date, the court in the Pennsylvania Action has not yet ruled on Plaintiffs' Motion for Leave nor has it determined whether it has personal jurisdiction over Callon.

66.     Out of an abundance of caution, and in order to fully protect the two certified Classes in the Pennsylvania Action, Plaintiffs now bring the instant action in this court in order to comply with the one-year statute of

limitations under the Pennsylvania Uniform Voidable Transactions Act and Texas Uniform Fraudulent Transfer Act.[4]

## II.    CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 and the claims herein are proper for certification as a Class Action thereunder.

34.    Plaintiffs bring this action on behalf of themselves and two proposed Classes, which have already been certified in the Pennsylvania Action,[5] as follows:

No Deductions Class
All persons or entities within the Commonwealth who are, or have been, a royalty owner under a Paid Up Oil and Gas Lease with or assigned to one or more of Defendants where that lease expressly prohibits the deduction of post-production expenses when calculating royalty amounts due, and where (a) natural gas has been produced under the lease, (b) the person or entity has received one or more royalty payments under the lease, and (c) the person or entity has not released their claims in this matter.

Highest Price Class
All persons or entities within the Commonwealth who are, or have been, a royalty owner under a Paid Up Oil and Gas Lease with or assigned to one or more of Defendants where that lease expressly provides that the value of natural gas on which lessee owes a royalty percentage is, absent application of a contractual proviso, the greater of the NYMEX spot price and/or the prevailing local market price, or the price at which the gas is sold, and where (a) natural gas has been produced under the lease, (b) the person or entity has received one or more royalty payments under the lease, and (c) the person or entity has not released their claims in this matter.

---

[4] On November 22, 2022, Plaintiffs wrote a letter to the Honorable Robert D. Mariani, the judge presiding over the Pennsylvania Action, advising him of Plaintiffs' intention to file a placeholder protective complaint in Texas in the event the court did not rule on the Motion for Leave prior to January 23, 2023.

[5] *See* No. 3:16-cv-02187-RDM, ECF 158 (granting class certification).

35.    Excluded from the Classes are Defendants, their officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates.

36.    The number of persons who are members of each Class are so numerous that joinder of all members in one action is impracticable.  Each Class exceeds one hundred participants.

37.    The objective facts are the same for all Class members in that: (a) each entered into a Paid Up Oil and Gas Lease with Marcellus or which was later assigned to Marcellus; (b) each received Royalty payments that were based on improperly deducted post-production costs or improperly calculated rates, or were otherwise improper under the terms of the Lease; and (c) each was harmed when Marcellus sold all of its interests in the Class Leases to BKV during the pendency of the Pennsylvania Action and then fraudulently transferred the $73.9 million in proceeds from that sale to Callon in exchange for no consideration.

38.    The claims of each Class all derive directly from Defendants' common course of conduct.

39.    Defendants did not differentiate, in degree of care or candor, their actions or inactions alleged among individual members of the Classes.  As the court in Pennsylvania Action already found, Marcellus paid Royalties to each Class member based upon the same improper interpretation of the terms of the Lease and based on the same improper calculations of the Royalty amounts due and owing to Plaintiff and members of the Classes. Similarly, Marcellus and Callon each knowingly participated in the fraudulent transfer of all of Marcellus' assets to Callon in exchange for no consideration, which equally affected all members of the two classes.

40.    Within each Claim for Relief asserted below the same legal standards govern resolution of the same operative facts existing across all members' individual claims.  If Defendants are liable to one Class member for each Claim for Relief they are liable to all Class members.

41.    Because the claims of each member of the Classes have a common origin and share a common basis in terms of Defendants' systematic misconduct, there are common questions of fact and law which exist and which are susceptible to common answers as to each Class member under Federal Rule of Civil Procedure 23(a)(2), and which predominate over any questions affecting only individual members under Federal Rule of Civil Procedure 23(b)(3).

42.    Substantial questions of fact and law that are common to all members of the Class, and which are susceptible to common answers and which control this litigation and predominate over any individual issues, include the following:

a)    Whether Marcellus breached the terms of the Lease by paying Plaintiff and the Classes a Royalty that was less than the amount required by the terms of the Lease, creating liability to Plaintiffs and the Classes in the Pennsylvania Action;

b)    Whether Marcellus transferred all or substantially all of its assets to Callon in exchange for no consideration during the pendency of the Pennsylvania Action in order to hinder, delay, or defraud Plaintiffs and the Classes as contingent creditors of Marcellus;

c)    Whether Marcellus actively concealed the transfer of the $73.9 million in sale proceeds to Callon from Plaintiffs, the Classes, the court in the Pennsylvania Action, and the general public;

d)    Whether Marcellus became insolvent upon the transfer of all of its assets to Callon in exchange for no consideration;

e)    Whether Callon was unjustly enriched by its receipt of $73.9 million from Marcellus in exchange for no consideration;

f)    Whether Plaintiffs and the Classes are entitled to void the fraudulent transfer to Callon; and

g)      Whether Plaintiffs and the Classes are entitled to damages.

43.    As already found by the court in the Pennsylvania Action, Plaintiffs' claims are typical of the claims of the Classes and arise from the same course of conduct undertaken by Defendants against the Classes as a whole.  As already found by the court in the Pennsylvania Action, there are no conflicts between the interests of the named Plaintiffs and the interests of the members of the Classes. The relief Plaintiffs are seeking is typical of the relief sought for the members of the Class.

44.    As already found by the court in the Pennsylvania Action, Plaintiffs will fairly and adequately represent and protect the interests of the Classes because of the common injury and interests of the members of the Classes and the uniform conduct of Defendants that is, and was, applicable to all members of the Classes. As already found by the court in the Pennsylvania Action, Plaintiffs have retained counsel competent and experienced in class action litigation that will adequately represent and protect the interests of the members of the Classes.

45.    As already found by the court in the Pennsylvania Action, class certification is appropriate under Federal Rule of Civil Procedure 23 not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Classes. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

46.    Plaintiffs are not aware of any management difficulties which should preclude maintenance of this litigation as a class action. Plaintiffs do not anticipate any difficulty in the management of this action as a class action. Federal Rule of Civil Procedure 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, utilize the provisions of Rule 23 to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23 to divide any Classes into further subclasses.

47.    Class certification is also appropriate under Federal Rule of Civil Procedure 12(b)(1) and (b)(2) with respect to injunctive relief.  Injunctive relief is required for Plaintiffs and members of the Classes to the extent that they seek to void the transaction between Marcellus, BKV, and Callon and the transfer of all of Marcellus' assets to Callon for no consideration. Absent this, money damages alone are insufficient to redress the irreparable harm, as Marcellus is insolvent. Injunctive relief is also required because Defendants have acted or refused to act on grounds that apply generally to the Classes so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

## III.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Voiding of Marcellus' Fraudulent Transfer to Callon
Under Pennsylvania's Uniform Voidable Transactions Act
Against All Defendants**

48.    Plaintiffs and the Classes repeat and re-allege each and every allegation contained above as if fully set forth herein.

49.    The Pennsylvania Uniform Voidable Transactions Act, 12 Pa. C.S. §§ 5101-5014, provides in part as follows:

§ 5104. Transfer or obligation voidable as to present or future creditor.

(a) General rule. – A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)  with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)  intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

50.    As set forth above, Marcellus transferred all of its assets to BKV in November 2017.

51.    Marcellus received nothing in exchange for the transfer of all of its assets.

52.    Marcellus instead directed BKV to send the entirely of the $73.9 million in sale proceeds to Callon.

53.    At the time the sale proceeds were sent to Callon, Callon was an insider of Marcellus.

54.    Marcellus directed BKV to pay the entirety of the $73.9 million in sale proceeds to Callon in order to hinder, delay, or defraud the claims of Plaintiffs and the Classes as creditors of Marcellus in the Pennsylvania Action.

55.    Marcellus actively concealed the transfer of the $73.9 million in sale proceeds to Callon from Plaintiffs, the Classes, the court in the Pennsylvania Action, and the general public.

56.    At the time it sold all of its assets to BKV in exchange for nothing, Marcellus had actual knowledge of this Class Action lawsuit and the claims of Plaintiffs and the Classes as creditors of Marcellus.

57.    The transfer of $73.9 million in sale proceeds from Marcellus to Callon represented substantially all of Marcellus' assets.

58.    Marcellus received no consideration from Callon in exchange for transferring the $73.9 million in sale proceeds to Callon; instead, Marcellus transferred $73.9 million to Callon for nothing.

59.    Marcellus, upon selling all of its assets to BKV in exchange for nothing, immediately became insolvent.

60.    Callon did not take the $73.9 million from Marcellus (via BKV) in good faith or for reasonably equivalent value. To the contrary, Callon took $73.9 million from Marcellus in exchange for nothing. Callon paid no consideration to either BKV or to Marcellus in exchange for receipt of the sale proceeds.

61.    Plaintiffs have commenced this action within one year of learning of Defendants' intentional fraudulent transfer.

## SECOND CAUSE OF ACTION
### Voiding of Marcellus' Fraudulent Transfer to Callon
### Under Texas' Uniform Fraudulent Transfer Act
### Against All Defendants

62.     Plaintiffs and the Classes repeat and re-allege each and every allegation contained above as if fully set forth herein.

63.     The Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. §§ 24.001-24.013, provides in part as follows:

§ 24.005. Transfers fraudulent as to present and future creditors.

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)  with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)  intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

64.     As set forth above, Marcellus transferred all of its assets to BKV in November 2017.

65.     Marcellus received nothing in exchange for the transfer of all of its assets.

66.     Marcellus instead directed BKV to send the entirely of the $73.9 million in sale proceeds to Callon.

67.    At the time the sale proceeds were sent to Callon, Callon was an insider of Marcellus.

68.    Marellus directed BKV to pay the entirety of the $73.9 million in sale proceeds to Callon in order to hinder, delay, or defraud the claims of Plaintiffs and the Classes as creditors of Marcellus in the Pennsylvania Action.

69.    Marcellus actively concealed the transfer of the $73.9 million in sale proceeds to Callon from Plaintiffs, the Classes, the court in the Pennsylvania Action, and the general public.

70.    Before transferring the $73.9 million in sale proceeds to Callon, Marcellus had been sued by Plaintiffs and the Classes and Marcellus had actual knowledge of this Class Action lawsuit and the claims of Plaintiffs and the Classes as creditors of Marcellus.

71.    The transfer of $73.9 million in sale proceeds from Marcellus to Callon represented substantially all of Marcellus' assets.

72.    Marcellus received no consideration from Callon in exchange for transferring the $73.9 million in sale proceeds to Callon; instead, Marcellus transferred $73.9 million to Callon for nothing.

73.    Marcellus, upon selling all of its assets to BKV Chelsea in exchange for nothing, immediately became insolvent.

74.    Callon did not take the $73.9 million from Marcellus (via BKV) in good faith or for reasonably equivalent value. To the contrary, Callon took $73.9 million from Marcellus in exchange for nothing. Callon paid no consideration to either BKV or to Marcellus in exchange for receipt of the sale proceeds.

75.    Plaintiffs have commenced this action within one year of learning of Defendants' intentional fraudulent transfer.

## THIRD CAUSE OF ACTION
### Unjust Enrichment – Against Callon Petroleum Company

76.     Plaintiffs and the Classes repeat and re-allege each and every allegation contained above as if fully set forth herein.

77.     During the pendency of the Pennsylvania Action, Callon (then known as Carrizo Oil & Gas, Inc.) received $73.9 million in sale proceeds that BKV paid to acquire all assets, including the Class Leases, then-owned by Marcellus.

78.     At the time of the transfer, Callon had actual knowledge of this case and the claims of Plaintiffs and the Classes.

79.     Callon did not take the $73.9 million in good faith or in exchange for providing anything of reasonably equivalent value.

80.     Under the circumstances, it would be both inequitable and unjust to allow Callon to retain the benefit of the $73.9 million in sale proceeds, which it acquired in exchange for nothing, while leaving Marcellus insolvent, assetless, and unable to pay creditors or satisfy any judgment won by Plaintiffs and the Classes.

## IV.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and other members of the Classes, respectfully request that the Court:

A.     Certify the Classes pursuant to Federal Rule of Civil Procedure 23 and designate the Plaintiffs as the representatives of, and their undersigned counsel as Counsel for, the Classes;

B.     Declare the transfer of the $73.9 million in sale proceeds to Callon a voidable transaction under the Pennsylvania Uniform Voidable Transactions Act

C.     Declare the transfer of the $73.9 million in sale proceeds to Callon a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act;

D.     Award Plaintiffs and the Classes a constructive trust over the $73.9 million in sale proceeds unlawfully transferred to Callon and/or appoint a receiver;

E.      Award Plaintiffs and the Classes injunctive relief, as appropriate, including without limitation an injunction prohibiting Marcellus and Callon from taking any further actions to dissipate any legal or equitable assets of Marcellus (including the $73.9 million wrongfully transferred to Callon) during the pendency of this Class Action;

F.      Enter judgments against each of the Defendants and in favor of the Plaintiffs and members of the Classes predicated on Defendants' violations of the Pennsylvania Uniform Voidable Transactions Act;

G.      Enter judgments against each of the Defendants and in favor of the Plaintiffs and members of the Classes predicated on Defendants' violations of the Texas Uniform Fraudulent Transfer Act;

H.      Award Plaintiffs and the Classes actual, equitable, and compensatory damages as allowed by law in an amount to be determined at trial;

I.      Award Plaintiffs and the Classes their costs of suit, including reasonable attorneys' fees, as allowed by law;

J.      Award Plaintiffs and the Classes pre-judgment and post-judgment interest, as allowed by law; and

K.      Award such further and additional relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Classes demand a trial by jury on all issues so triable.

Dated:  January 17, 2023           **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**


_/s/ Randi Kassan_

22

Randi Kassan
100 Garden City Plaza, Suite 500
Garden City, NY 11530
865-412-2700
Glen L. Abramson (*pro hac vice application forthcoming*)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
866.252.0878
rkassan@milberg.com
gabramson@milberg.com


**LeVAN STAPLETON SEGAL COCHRAN LLC**
Peter H. LeVan, Jr. (*pro hac vice application forthcoming*)
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, PA 19103
215.561.1500
plevan@levanstapleton.com

**BERGER MONTAGUE PC**
Shanon J. Carson (*pro hac vice application forthcoming*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215.875.3000
scarson@bm.net

*Counsel for Plaintiffs and Putative Classes*